PHILLIP A. TALBERT
United States Attorney
MATTHEW THUESEN
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

MARGARET A. MOESER
Acting Chief, Money Laundering and Asset Recovery Section
Criminal Division, U.S. Department of Justice
KEVIN D. MOSLEY
EMILY COHEN
CAYLEE CAMPBELL
Trial Attorneys
1400 New York Ave NW
Washington, D.C. 20005
Telephone: (202) 514-1263

Attorneys for Plaintiff
United States of America

**FILED**

Mar 27, 2024

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:24-cr-0072 KJM |
| Plaintiff, | 18 U.S.C. § 371 – Conspiracy to Commit an Offense |
| v. | |
| ARTUR SCHABACK, | |
| Defendant. | |

I N F O R M A T I O N

The United States Attorney charges:

ARTUR SCHABACK,

defendant herein, as follows:

///

///

///

INFORMATION

1

INTRODUCTION

At all relevant times,

1. ARTUR SCHABACK was an Estonian citizen and legal permanent resident of the United States.

2. Co-conspirator 1 was a dual citizen of the United States and Egypt.

*The Paxful Virtual Currency Marketplace*

3. In or around July 2015, ARTUR SCHABACK and Co-conspirator 1 launched the online peer-to-peer virtual currency marketplace known as "Paxful," available on the website www.paxful.com. ARTUR SCHABACK and Co-conspirator 1 controlled and maintained Paxful.

4. Paxful offered customers in the United States and elsewhere a variety of services related to virtual currency, including money transmitting services. Primarily, Paxful served as an online trading market where customers with Paxful accounts negotiated for and traded in virtual currency, such as bitcoin, including in exchange for other financial instruments such as gift cards, pre-paid cards, and fiat currency.

5. To facilitate the Paxful trades on behalf of customers, ARTUR SCHABACK and Co-conspirator 1 maintained virtual currency wallets known as "escrow wallets," which were used to accept and hold customers' virtual currency until such time that a trade was confirmed. Once confirmed by the necessary customer(s), ARTUR SCHABACK and Co-conspirator 1 directed and caused the release of virtual currency from the escrow wallet to the appropriate customer's Paxful account.

6. In addition to the virtual marketplace, Paxful offered customers the ability to store virtual currency in their Paxful accounts, transfer virtual currency to and from other Paxful accounts, and externally transfer (or "send-out") virtual currency from Paxful accounts to external accounts, including those of third-party vendors. ARTUR SCHABACK and Co-conspirator 1 collaborated with third-party vendors, including by integrating "Pay With Paxful" widgets (components of an interface, such as a "button," that enable certain functions when clicked) on third-party websites to direct customers to Paxful for payment services. Upon instruction from customers, ARTUR SCHABACK and Co-conspirator 1 directed and caused the release of virtual currency from the escrow wallet to the designated external account.

7. ARTUR SCHABACK and Co-conspirator 1 collected fees related to Paxful's escrow and transfer services, including percentage fees for trades facilitated over the online marketplace, fees for certain internal transfers between Paxful customer accounts, and fees for external send-outs, such as those destined for third parties. The amount of each fee depended on the type of trade and payment method, the number of internal transfers conducted, and the dollar value of the external send-out. For example, ARTUR SCHABACK and Co-conspirator 1 charged a fee of approximately four to five percent for Paxful trades involving certain types of gift cards and charged a fixed external fee for bitcoin external send-outs over $20.00.

8. Through Paxful, ARTUR SCHABACK and Co-conspirator 1 engaged in, facilitated, and profited from the national and international transfer of user funds, including throughout the United States and within the State and Eastern District of California.

*Companies Operating Paxful*

9. ARTUR SCHABACK and Co-conspirator 1 controlled, operated, and maintained Paxful through multiple companies they established:

   a. In or around July 2015, ARTUR SCHABACK and Co-conspirator 1 established and registered the corporation Paxful, Inc., in Delaware, which they used to operate Paxful. Co-conspirator 1 was the President and Chief Executive Officer of Paxful, Inc. ARTUR SCHABACK was, at various times, the Chief Technology Officer, Chief Operating Officer, and Chief Product Officer of Paxful, Inc.

   b. In or around December 2016, ARTUR SCHABACK and Co-conspirator 1 established and registered the corporation Paxful OÜ (later known as Peaceful Tech OÜ) in Estonia, which they used to assist Paxful, Inc., in operating Paxful.

   c. In or around June 2019, ARTUR SCHABACK and Co-conspirator 1 established and registered the parent corporation Paxful Holdings, Inc., in Delaware. Through the parent corporation, ARTUR SCHABACK and Co-conspirator 1 absorbed, established, registered, and controlled subsidiary companies, including Paxful, Inc., and Paxful OÜ. ARTUR SCHABACK and Co-conspirator 1 used Paxful Holdings, Inc., and its subsidiaries to conduct Paxful operations. ARTUR SCHABACK and Co-conspirator 1 served as the sole board members of Paxful Holdings, Inc., held

INFORMATION 3

nearly all of Paxful Holdings, Inc.'s common stock, and assumed leadership roles with decision making authority within Paxful Holdings, Inc.

*Bank Secrecy Act*

10. By operating Paxful, as described above, wholly or in substantial part within the United States, including by serving customers in the United States, Paxful, Inc., was a financial institution within the meaning of 31 U.S.C. § 5312 and was required to comply with the requirements of the Bank Secrecy Act, codified at 31 U.S.C. § 5311 et seq. (the "BSA"), and its implementing regulations. Specifically, Paxful, Inc., constituted a money transmitting business ("MTB") under 31 U.S.C. § 5312(a)(2)(R) as a "sender of money or any other person who engages as a business in the transmission of currency, funds, or value that substitutes for currency, including any person who engages as a business in an informal money transfer system or any network of people who engage as a business in facilitating the transfer of money domestically or internationally outside the conventional financial institutions system." Under the BSA's implementing regulations, because Paxful, Inc., was an MTB, or a "person that provides money transmission services," it also constituted a money services business ("MSB").

11. The BSA was designed to prevent, detect, and prosecute international money laundering and the financing of terrorism. 31 U.S.C. § 5311. The BSA imposed reporting, recordkeeping, and controls requirements on covered "financial institutions," which included MTBs, that were required to register as such with the Secretary of the Treasury within 180 days after the date the business was established, and which were required to maintain current registration thereafter. 31 U.S.C. § 5330.

12. On July 27, 2015, ARTUR SCHABACK and Co-conspirator 1 registered Paxful, Inc., as an MTB with the Financial Crimes Enforcement Network ("FinCEN"), a bureau of the United States Department of the Treasury. ARTUR SCHABACK and Co-conspirator 1 allowed that registration to lapse on January 1, 2017, and failed to reregister Paxful, Inc., as an MTB until September 3, 2019.

13. Under the BSA, within 90 days of the date the business was established, an MTB was required to establish an effective anti-money laundering ("AML") program that included, at a minimum: the development of internal policies, procedures, and controls; the designation of a compliance officer; an ongoing employee training program; and an independent audit function to test programs. *See* 31

INFORMATION 4

U.S.C. § 5318(h)(1); 31 C.F.R. § 1022.210. MTBs also were required to file suspicious activity reports ("SARs"), including for transactions involving or aggregating funds or other assets of at least $2,000 if the MTB knew, suspected, or had reason to suspect, among other things, that the transaction involved funds derived from illegal activity or that the MTB was being used to facilitate criminal activity. *See* 31 C.F.R. § 1022.320.

14. As a part of its AML program, an MTB was required to implement a written Know Your Customer ("KYC") program that included risk-based procedures for verifying the identity of each customer to the extent reasonable and practicable. At a minimum, the KYC program was required to collect the name, date of birth, address, and other identifying information of each customer prior to account opening and take steps to verify that information in a reasonable time. The KYC program also was required to include procedures for determining whether a customer appeared on any list of known or suspected terrorists or terrorist organizations issued by any federal government agency. *See* 31 U.S.C. § 5318(l); 31 C.F.R. § 1022.210.

## THE CONSPIRACY

15. From in or around July 2015, through in or around at least June 2019, in the State and Eastern District of California and elsewhere, ARTUR SCHABACK and Co-conspirator 1 knowingly and willfully combined, conspired, confederated, and agreed with each other and others known and unknown to the United States to commit an offense against the United States, that is, to willfully fail to establish, develop, implement, and maintain an effective AML program, commensurate with the risks posed by the location and size of, and the nature and volume of the financial services provided by the MTB, that is, Paxful, Inc., that were reasonably designed to prevent the MTB from being used to facilitate money laundering and the financing of terrorist activities, and including, at a minimum—(A) the development of internal policies, procedures, and controls; (B) the designation of a compliance officer; (C) an ongoing employee training program; and (D) an independent audit function to test programs, in violation of the BSA, specifically, 31 U.S.C. §§ 5318(h)(1)-(2) and 5322, and regulations issued thereunder, specifically 31 C.F.R. § 1022.210(a)-(d) (formerly § 103.125(a)-(d)).

///

///

MANNER AND MEANS

The manner and means by which ARTUR SCHABACK, Co-conspirator 1, and others sought to accomplish the object of the conspiracy included, among others, the following:

16. ARTUR SCHABACK and Co-conspirator 1 established and registered multiple companies for the purpose of operating Paxful.

17. ARTUR SCHABACK and Co-conspirator 1 controlled Paxful, including www.paxful.com, and made executive decisions regarding Paxful's operations.

18. ARTUR SCHABACK and Co-conspirator 1 designed, intended, and operated Paxful to accept funds from customers around the world, including in the United States, and to facilitate the transfer of such funds, including virtual currency, between, among, and on behalf of Paxful customers.

19. ARTUR SCHABACK and Co-conspirator 1 contracted with a digital asset trust company located in the United States to assist in the transfer of virtual currency on behalf of Paxful customers by using the digital asset trust company as a third-party custodian of Paxful's virtual currency escrow wallet(s), which accepted, stored, and transferred Paxful customer virtual currency.

20. ARTUR SCHABACK and Co-conspirator 1 maintained control of a private key—a key required to access and manage virtual currency within a wallet—to the escrow wallet(s) and, accordingly, maintained control over the transfer of virtual currency from those same wallet(s).

21. ARTUR SCHABACK and Co-conspirator 1 failed to implement and maintain policies, procedures, and internal controls reasonably designed to assure compliance with the BSA for: (1) an effective AML program; (2) verifying customer identification; (3) filing SARs; (4) designating a person to assure day-to-day compliance with the AML program, including by properly filing reports, creating and retaining records, updating the program as necessary, and providing appropriate training and education; (5) providing for independent audit functions to test the AML program; (6) and providing training for appropriate personnel. For example, ARTUR SCHABACK, Co-conspirator 1, and others:

    a. Allowed customers to open Paxful accounts and trade on www.paxful.com without providing sufficient identifying information or documents to allow Paxful, Inc., to verify the true identities of its customers;

      b.     Marketed Paxful to customers as a platform that did not require KYC and/or that allowed "buying without ID";

      c.     Facilitated the transfer of funds between customers without conducting KYC, despite knowing Paxful was required to do so, claiming to vendors and other parties that Paxful outsourced KYC procedures to Paxful vendors, who were responsible for KYC and "following MSB guidelines," or claiming "all the KYC is left to our vendors on a per trade basis";

      d.     Failed to establish AML and KYC policies and procedures to monitor customer transactions for money laundering, sanctions violations, illegal prostitution, and terrorist funding, among other criminal activity;

      e.     Presented an AML policy plagiarized from another institution to third parties that they knew were not, in fact, implemented or enforced at Paxful;

      f.     Made exceptions to AML and KYC policies based on Paxful customers' trading volumes and their relationships with ARTUR SCHABACK or Co-conspirator 1;

      g.     Failed to file a single SAR, despite knowing that Paxful customers conducted suspicious and criminal activity, including money laundering, and despite receiving law enforcement and public requests related to such activity;

      h.     Failed, until in or around November 2018, to designate a compliance officer to ensure day-to-day compliance with AML and KYC programs;

      i.     Failed, until in or around June 2019, to provide training to employees related to AML and KYC; and

      j.     Failed to provide for independent compliance testing or auditing for AML.

22.     As a result of their failure to implement AML and KYC programs, ARTUR SCHABACK, Co-conspirator 1, and others made Paxful available as a vehicle for money laundering, sanctions violations, and other criminal activity, including fraud, romance scams, extortion schemes, and prostitution.

///

///

///

INFORMATION       7

OVERT ACTS

In furtherance of the conspiracy, and to accomplish its objects and purposes, at least one of the conspirators committed, or caused to be committed, in the Eastern District of California and elsewhere, the following overt acts, among others:

23. On or about the dates listed below, ARTUR SCHABACK and Co-conspirator 1 allowed undercover law enforcement located within the Eastern District of California to open Paxful accounts and conduct trades on Paxful without requiring or receiving any identification or other KYC information beyond a name and email address:

| Account Opening/Transaction Date | Account Name |
| --- | --- |
| Opening: October 14, 2016 | snowbunnyman |
| Transaction: October 26, 2016 | snowbunnyman |
| Transaction: November 30, 2016 | snowbunnyman |
| Opening: April 1, 2019 | dr.Frosty |
| Opening: April 8, 2019 | therealpureheroin |

24. On or about February 17, 2017, ARTUR SCHABACK and Co-conspirator 1 sent or caused to be sent an updated AML policy, which ARTUR SCHABACK and Co-conspirator 1 did not, in fact, implement or enforce at Paxful, Inc., to a separate virtual currency exchange that had criticized a prior version of Paxful, Inc.'s purported AML policy.

25. On or about April 14, 2017, ARTUR SCHABACK sent an email to a prospective Paxful customer sharing the benefits of Paxful in which he stated that trades were "instant and anonymous whereas with exchanges you have to KYC yourself and wait 5 days for bitcoins to arrive" and noted that gift cards, cash deposits, and Western Union deposits had markups up to 20 percent but were "instant and anonymous."

///
///
///

26. On or about December 17, 2017, ARTUR SCHABACK sent an internal communication to Co-conspirator 1, stating that Paxful, Inc., should not conduct KYC on "small amount buyers."

All in violation of Title 18, United States Code, Section 371.

Dated: March 27, 2024

PHILLIP A. TALBERT
United States Attorney

By: _____
MATTHEW THUESEN
Assistant United States Attorney

MARGARET A. MOESER
Acting Chief
Money Laundering and Asset Recovery
Section, Criminal Division
U.S. Department of Justice

By: /s/ Kevin G. Mosley
KEVIN G. MOSLEY
EMILY COHEN
CAYLEE CAMPBELL
Trial Attorneys

**United States v. Schaback**
**Penalties for Information**

**Defendant**
**ARTUR SCHABACK**

**COUNT 1:**

VIOLATION: 18 U.S.C. § 371 – Conspiracy to Commit an Offense

PENALTIES: Up to 5 years of imprisonment, or fine up to $250,000 or twice the pecuniary gain or loss, or both imprisonment and a fine;
Up to 3 years of supervised release;
Restitution

SPECIAL ASSESSMENT: $100 (mandatory on each count)