PHILLIP A. TALBERT
United States Attorney
MATTHEW THUESEN
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

MARGARET A. MOESER
Acting Chief, Money Laundering and Asset Recovery Section
Criminal Division, U.S. Department of Justice
KEVIN G. MOSLEY
EMILY COHEN
VICTOR SALGADO
Trial Attorneys
1400 New York Ave NW
Washington, D.C. 20005
Telephone: (202) 514-1263

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

ARTUR SCHABACK,

Defendant.

CASE NO. 2:24-CR-0072 KJM

PLEA AGREEMENT

DATE: JULY 8, 2024
TIME: 9:00 a.m.
COURT: Hon. Kimberly J. Mueller

## I. INTRODUCTION

### A. Scope of Agreement.

The Information in this case charges the defendant with one count of conspiracy to willfully fail to establish, develop, implement, and maintain an effective anti-money laundering ("AML") program as required by the Bank Secrecy Act ("BSA"), 31 U.S.C. §§ 5318(h), 5322(b), 5322(c), 5322(e), and 31 C.F.R. § 1022.210, in violation of 18 U.S.C. § 371. This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California and the

Money Laundering and Asset Recovery Section of the Criminal Division of the Department of Justice (collectively, the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and the Money Laundering and Asset Recovery Section of the Criminal Division of the Department of Justice and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authority.

**B. Court Not a Party.**

The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances concerning the criminal activities of the defendant, including activities that may not have been charged in the Information. The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

## II. DEFENDANT'S OBLIGATIONS

**A. Guilty Plea.**

The defendant will plead guilty to the one-count Information filed in this case, which charges him with conspiracy to willfully fail to establish, develop, implement, and maintain an effective AML program as required by the BSA, in violation of 18 U.S.C. § 371. The defendant agrees he is in fact guilty of that charge and that the facts set forth in the Factual Basis for Plea attached as Exhibit A are accurate.

The defendant agrees this plea agreement will be filed with the Court and become a part of the record of the case. The defendant understands and agrees he will not be allowed to withdraw his plea should the Court not follow the government's sentencing recommendations.

The defendant agrees the statements he makes in signing this agreement, including the factual

admissions set forth in the Factual Basis for Plea attached as Exhibit A, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this agreement. The defendant waives any rights under Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, to the extent these rules are inconsistent with this paragraph or with this agreement generally.

1. **Waiver of Indictment.**

The defendant acknowledges that, under the United States Constitution, he is entitled to be indicted by a grand jury on the charge to which he is pleading guilty and that, pursuant to Rule 7(b) of the Federal Rules of Criminal Procedure, he agrees to waive any and all rights he has to being prosecuted by way of indictment to the charge set forth in the Information. The defendant agrees that, at a time set by the Court, he will sign a written waiver of prosecution by indictment and consent to proceed by information, rather than by indictment.

**B. Fine.**

The government and the defendant agree to recommend that the Court impose a fine in the amount of $5,000,000.00 in United States currency, of which the defendant will pay $1,000,000.00 on or before the date he enters his guilty plea, $3,000,000.00 on or before the date of sentencing and $1,000,000.00 over the course of two years post plea. Payments towards the fine shall be by cashier's check or certified check made payable to the Clerk of the Court.

The defendant agrees that all criminal monetary penalties imposed by the Court, including the fine (if a balance remains), will be subject to enforcement by the United States. The defendant agrees that any payment schedule or plan set by the Court is merely a minimum and does not foreclose the United States from collecting all outstanding criminal monetary penalties at any time through all available means.

Until the criminal monetary penalties, including the fine, are paid in full, the defendant shall not sell, encumber, transfer, convey, or otherwise dispose of any of his assets without prior written consent of the government, except that the defendant may sell, transfer or convey personal property (including used vehicles and personal items, but not financial instruments, ownership interests in business entities or real property) with an aggregate value of less than $5,000.

The defendant understands that this plea agreement is voidable at the option of the government if he fails to pay the stipulated criminal monetary penalties, including the fine, as set forth herein.

**C. Special Assessment.**

The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. The defendant understands this plea agreement is voidable at the option of the government if he fails to pay the assessment prior to that hearing.

**D. Resignation from Company and Prohibition on Future Management**

The defendant agrees to resign from the Board of Directors of Paxful Holdings, Inc., as well as the boards of directors of any subsidiaries of Paxful Holdings, Inc., prior to the entry of his guilty plea. The defendant further understands and agrees that he is prohibited from serving on the Board of Directors of Paxful Holdings, Inc., and the boards of any of its subsidiaries, and from undertaking any future involvement in operating, managing, directing, supervising, or controlling Paxful Holdings, Inc., and its subsidiaries.

**E. Violation of plea agreement by Defendant/Withdrawal of Plea(s).**

If the defendant violates this plea agreement in any way, withdraws his plea, or tries to withdraw his plea, this plea agreement is voidable at the option of the government. If the government elects to void the agreement based on the defendant's violation, the government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. A defendant violates the plea agreement by committing any crime or providing or procuring any statement or testimony that is knowingly false, misleading, or materially incomplete in any litigation or sentencing process in this case or engaging in any post-plea conduct constituting obstruction of justice or violating any conditions of release or the conditions of confinement. Varying from the stipulated Guidelines application, as set forth in this agreement, personally or through counsel, also constitutes a violation of the plea agreement. The government also shall have the right (1) to prosecute the defendant on any of the counts to which he pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; (3) to file any new charges that would otherwise be barred by this plea agreement; and (4) to seek a sentence that takes such conduct into consideration by

requesting the Court to apply additional adjustments or enhancements in its Sentencing Guidelines calculations in order to increase the applicable advisory Guidelines range, and/or by seeking an upward departure or variance from the advisory Guidelines range. Under these circumstances, the government is free to seek such adjustments, enhancements, departures, and/or variances even if otherwise precluded by the terms of this plea agreement. The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge. The decision to pursue any or all of these options is solely in the discretion of the government.

By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses the defendant might have to the government's decision. Any prosecutions not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions. The defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts not time barred as of the date of this plea agreement. The determination of whether the defendant has violated the plea agreement will be under a probable cause standard.

In addition, (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

**F. <u>Asset Disclosure.</u>**

The defendant agrees to make a full and complete disclosure of his assets and financial condition and will complete the United States Attorney's Office's "Authorization to Release Information" and

"Financial Affidavit" within three (3) weeks from the entry of the defendant's change of plea, including supporting documentation. The defendant also agrees to have the Court enter an order to that effect. The defendant understands that, if he fails to truthfully complete and provide the described documentation to the United States Attorney's Office within the allotted time, he will be considered in violation of this plea agreement, and the government shall be entitled to the remedies set forth in section II.D above.

The defendant expressly authorizes the United States to immediately obtain a credit report to evaluate defendant's ability to satisfy any monetary penalty imposed by the Court. The defendant also authorizes the government to inspect and copy all financial documents and information held by the U.S. Probation Office.

## III. THE GOVERNMENT'S OBLIGATIONS

### A. Other Charges.

The government agrees not to bring any other charges against the defendant arising from the conduct outlined in the Factual Basis attached as Exhibit A, except if this agreement is voided as set forth herein, or as provided in paragraphs II.D (Violation of plea agreement by Defendant/Withdrawal of Plea(s)), II.B (Fine), VI.B (Guideline Calculations), and VII.B (Waiver of Appeal and Collateral Attack) herein.

### B. Recommendations.

#### 1. Incarceration Range.

The government will recommend the defendant be sentenced within the applicable guideline range as determined by the Court.

#### 2. Acceptance of Responsibility.

The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of the defendant's offense level, if the defendant clearly demonstrates acceptance of responsibility for his conduct as defined in U.S.S.G. § 3E1.1. This includes the defendant meeting with and assisting the Probation Officer in the preparation of the pre-sentence report, being truthful and candid with the Probation Officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

C. **Use of Information for Sentencing.**

The government is free to provide full and accurate information to the Court and Probation, including answering any inquiries made by the Court and/or Probation and rebutting any inaccurate statements or arguments by the defendant, his attorney, Probation, or the Court. The defendant also understands and agrees that nothing in this plea agreement bars the government from defending on appeal or collateral review any sentence the Court may impose.

## IV. ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense to which the defendant is pleading guilty, conspiracy to commit an offense:

First, there was an agreement between two or more persons to commit a crime as charged in the Information, that is to willfully fail to establish, develop, implement, and maintain an effective AML program as required by the BSA and regulations issued thereunder;

Second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

Third, one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy. The defendant fully understands the nature and elements of the crime charged in the Information to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with his attorney.

## V. MAXIMUM SENTENCE

A. **Maximum Penalty.**

The maximum sentence the Court can impose for a violation 18 U.S.C. § 371 is five years of incarceration, a fine of up to $250,000, or twice the pecuniary gain or loss under 18 U.S.C. § 3571(d), a three-year period of supervised release, and a special assessment of $100.

B. **Violations of Supervised Release.**

The defendant understands that, if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to two additional years of imprisonment.

## VI. SENTENCING DETERMINATION

### A. Statutory Authority.

The defendant understands the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. The defendant further understands the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

### B. Guideline Calculations.

The government and the defendant agree there is no material dispute as to the following sentencing guidelines variables and, therefore, stipulate to the following:

Base offense level: 8, pursuant to U.S.S.G. § 2S1.3(a)(1).

Specific offense characteristics:

> 2 levels are added pursuant to U.S.S.G. § 2S.1.3(b)(1), as the defendant knew or believed that the funds were proceeds of unlawful activity or were intended to promote unlawful activity.
>
> 2 levels are added pursuant to U.S.S.G. § 2S1.3(b)(2), as the defendant (A) was convicted of an offense under subchapter II of chapter 53 of title 31, United States Code; and (B) committed the offense as part of a pattern of unlawful activity involving more than $100,000 in a 12-month period. Conspiracy to violate Title 31 is encompassed within the term "conviction" per U.S.S.G. § 1B1.3 Application Note 7.

Chapter Three adjustments:

> 2 levels are added pursuant to U.S.S.G. § 3B1.1(c), based on the defendant's role as an organizer, leader, or supervisor of the criminal activity.
>
> 2 levels are subtracted under U.S.S.G. § 3E1.1, if the defendant pleads guilty and accepts responsibility for the offense, as provided in paragraph III.2 above.

The parties estimate, but do not stipulate to the following:

Adjusted offense level: 12.

Criminal history: Category I.

Sentencing range: 10 to 16 months, if the defendant receives a 2-level reduction for acceptance of responsibility. (The defendant understands that, if the criminal history category and/or the offense level differs from the parties' estimate, his sentencing range may differ from that set forth here.)

The parties agree they will not seek or argue in support of any other specific offense characteristics, Chapter Three adjustments (other than the decrease for "Acceptance of Responsibility"), or cross-references, except the government may move for a departure or an adjustment based on the defendant's post-plea obstruction of justice (U.S.S.G. § 3C1.1). Both parties agree not to move for, or argue in support of, any other departure from the Sentencing Guidelines.

The defendant is free to make any arguments with respect to a variance from the guidelines under 18 U.S.C. § 3553(a). The government reserves its right to oppose any such variance and agrees to recommend a sentence within the applicable guideline range as determined by the Court.

## VII. WAIVERS

### A. Waiver of Constitutional Rights.

The defendant understands that, by pleading guilty, he is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, constitutional challenges to the statutes of conviction, and other pretrial motions that have been filed or could be filed; (e) to subpoena witnesses to testify on his behalf; (f) to confront and cross-examine witnesses against him; and (g) not to be compelled to incriminate himself.

### B. Waiver of Appeal and Collateral Attack.

The defendant understands the law gives the defendant a right to appeal his guilty plea, conviction, and sentence. The defendant agrees as part of his plea, however, to give up the right to appeal the guilty plea, conviction, and the sentence imposed in this case as long as the sentence does not exceed the statutory maximum penalties for the offense to which he is pleading guilty. The defendant understands this waiver includes, but is not limited to, any and all constitutional and/or legal challenges

to the defendant's conviction and guilty plea, including arguments that the statutes to which the defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts attached to this agreement is insufficient to support the defendant's plea of guilty. The defendant specifically gives up the right to appeal any fine, order of restitution, probation or supervised release conditions, or forfeiture order (if applicable) the Court may impose.

Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the statutory maximum; and/or (2) the government appeals the sentence in the case. The defendant understands these circumstances occur infrequently and in almost all cases this agreement constitutes a complete waiver of all appellate rights.

In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. §§ 2255 or 2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

Notwithstanding the government's agreements in paragraph III.A above, if the defendant ever attempts to vacate his plea, dismiss the underlying charges, or modify or set aside his sentence on the charge to which he is pleading guilty, the government shall have the rights set forth in Section II.D herein.

**C. Waiver of Attorneys' Fees and Costs.**

The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including, without limitation, any charges to be dismissed pursuant to this plea agreement and any charges previously dismissed).

**D. Waiver of Venue.**

The defendant understands that the law gives the defendant a right to be prosecuted in the district where the offense was committed. The defendant understands that, by pleading guilty, he is waiving that right and any and all objections to venue for the crime charged in the Information.

**E. Impact of Plea on Defendant's Immigration Status.**

The defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. The defendant nevertheless affirms he wants to plead guilty regardless of any immigration consequences his plea may entail, even if the consequence is his automatic removal from the United States.

## VIII. ENTIRE PLEA AGREEMENT

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

## IX. APPROVALS AND SIGNATURES

**A. Defense Counsel:**

I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated:

ANDREA MOSELEY
Attorney for Defendant

**B. Defendant:**

I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated:

ARTUR SCHABACK
Defendant

**C. Attorney for United States:**

I accept and agree to this plea agreement on behalf of the government.

Dated: July 5, 2024

PHILLIP A. TALBERT
United States Attorney

MATTHEW THUESEN
Assistant United States Attorney

MARGARET A. MOESER
Acting Chief
Money Laundering and Asset Recovery Section, Criminal Division
U.S. Department of Justice

KEVIN G. MOSLEY
EMILY COHEN
VICTOR SALGADO
Trial Attorneys

EXHIBIT "A"

Factual Basis for Plea

If this matter proceeded to trial, the United States would establish the following facts beyond a reasonable doubt:

On July 17, 2015, Artur Schaback and Co-conspirator 1 registered the company Paxful, Inc., with the Delaware Secretary of State. Schaback and Co-conspirator 1 served as Paxful, Inc.'s directors and sole board members, and, together, controlled the company. At various times, Schaback held the title of Chief Technology Officer, Chief Operating Officer, and Chief Product Officer. Co-conspirator 1 held the title of Chief Executive Officer. Through Paxful, Inc., Schaback and Co-conspirator 1 operated the online virtual currency trading platform known as Paxful, available at www.paxful.com, where customers advertised, negotiated, and initiated trades of virtual currency for a variety of other items, including fiat currency, pre-paid cards, and gift cards. On July 27, 2015, Schaback and Co-conspirator 1 registered Paxful, Inc., as a money transmitting business ("MTB") with the Financial Crimes Enforcement Network, which was a bureau of the U.S. Department of Treasury. On January 1, 2017, however, Schaback and Co-conspirator 1 allowed the registration to lapse and failed to register Paxful, Inc., again until September 3, 2019, despite continuing to operate Paxful, Inc., as an MTB, a type of money services business ("MSB").

Schaback and Co-conspirator 1, with assistance from others, designed the Paxful platform and knew its functions and capabilities. Schaback and Co-conspirator 1 maintained a virtual currency escrow wallet that they used to hold customers' virtual currency while a trade was pending. In March 2016, Schaback and Co-conspirator 1 contracted with a digital asset trust company to serve as the custodian of the escrow wallet but kept control over the release of virtual currency from the wallet by controlling the wallet's private key. Once customers confirmed a trade on the platform, Schaback and Co-conspirator 1, through Paxful, Inc., directed the transfer of virtual currency from the escrow wallet to the appropriate customer's account. The platform also permitted customers to transfer virtual currency internally between Paxful accounts and externally to accounts outside of the platform. Schaback and Co-conspirator 1 charged certain fees for each of their virtual currency transfer services. During the time Paxful, Inc., operated as an unlicensed MTB, it facilitated more than 26.7 million trades, aggregating nearly $3 billion in value, and collected more than $29.7 million in revenue.

In December 2016, Schaback and Co-conspirator 1 transferred Paxful business operations from New York to Tallinn, Estonia, where they established and registered the company Paxful OÜ (later known as Peaceful Tech OÜ). Schaback and Co-conspirator 1 controlled Paxful OÜ and used it to assist Paxful, Inc., in operating www.paxful.com, particularly for technological development. In June 2019, Schaback and Co-conspirator 1 reorganized their Paxful-related businesses and registered the parent company Paxful Holdings, Inc., in Delaware. Schaback and Co-conspirator 1 served as the parent company's directors and sole board members, and together controlled the company and each of its subsidiaries, which included Paxful, Inc., and Peaceful Tech OÜ. Schaback and Co-conspirator 1 used Paxful Holdings Inc., and each of its subsidiaries, to facilitate and operate the Paxful trading platform at www.paxful.com.

At all times, Paxful, Inc., was an MSB—specifically, an MTB—that engaged in the transmission of virtual currency domestically, including in the Eastern District of California, and internationally, on behalf of customers. At all times, Schaback and Co-conspirator 1 knew that Paxful, Inc., was required to

comply with the Bank Secrecy Act ("BSA"), including by establishing, developing, implementing, and maintaining an effective anti-money laundering ("AML") program. Schaback and Co-conspirator 1 knew that an effective AML program required policies, procedures, and internal controls, such as Know Your Customer ("KYC") policies, independent compliance testing, AML training, and monitoring and reporting procedures for suspicious activity.

Despite this, from July 2015 through at least June 2019, Schaback, Co-conspirator 1, and others willfully failed to establish, develop, implement, and maintain an effective AML program at Paxful, Inc., as a pattern of illegal activity involving more than $100,000 in a 12-month period. For example, at various periods between July 2015 and at least June 2019, Schaback, Co-conspirator 1, and others:

- Allowed customers to open Paxful accounts and trade on www.paxful.com without providing sufficient identifying information or documents to allow Paxful, Inc., to know the true identities of its customers;
- Marketed Paxful to customers as a platform that did not require KYC and/or that allowed "buying without ID;"
- Facilitated the transfer of funds between customers without conducting KYC, despite knowing Paxful was required to do so, claiming Paxful outsourced KYC procedures to Paxful vendors, who were responsible for KYC and "following MSB guidelines," or claiming "all the KYC is left to our vendors on a per trade basis;"
- Failed to implement effective AML and KYC policies and procedures to monitor customer transactions for suspicious activity;
- Presented fake AML and KYC policies to third parties that they knew were not, in fact, implemented or enforced at Paxful, Inc.;
- Made exceptions to AML and KYC policies based on Paxful customers' volume and amount of trading and/or their relationship to Co-conspirator 1 or Schaback;
- Failed to file a single suspicious activity report, as required by the BSA, despite knowing that suspicious and criminal activity, including money laundering, was being perpetrated by users on Paxful and despite receiving law enforcement and public requests related to such activity;
- Failed, until approximately November 2018, to designate a compliance officer to ensure day-to-day compliance with AML and KYC programs;
- Failed, until at least June 2019, to provide any training to employees related to AML and KYC; and
- Failed to provide for independent compliance testing or auditing for AML.

///

///

///

///

///

///

As a result of Schaback and Co-conspirator 1's failure to implement an effective AML program, on or about the dates listed below, Paxful allowed undercover law enforcement located in the Eastern District of California to open accounts and conduct trades on Paxful without requiring or receiving any identification or other KYC information beyond a name and email address:

| Account Opening/Trade Date | Account Name |
|---|---|
| Opening: October 14, 2016 | snowbunnyman |
| Trade: October 26, 2016 | snowbunnyman |
| Trade: November 30, 2016 | snowbunnyman |
| Opening: April 1, 2019 | dr.Frosty |
| Opening: April 8, 2019 | therealpureheroin |

Although they knew they had not established or implemented an AML program, Schaback and Co-conspirator 1 represented to others they had. For example, on February 17, 2017, Schaback and Co-conspirator 1 sent an updated "AML policy," which Schaback and Co-conspirator 1 did not in fact implement or enforce, to a virtual currency exchange at which they were seeking to open an account. At other times, they touted the benefits of their lack of an AML program to prospective customers. For example, on April 14, 2017, Schaback sent an email to a prospective customer, in which he stated that trades on the Paxful platform were "instant and anonymous whereas with exchanges you have to KYC yourself and wait 5 days for bitcoins to arrive." In the same message, Schaback further noted that certain trades, including trading gift cards for virtual currency, were "instant and anonymous." Schaback and Co-conspirator 1 also discussed controls they should not implement. For example, on December 17, 2017, Schaback sent Co-conspirator 1 an internal message recommending that they should not conduct KYC on "small amount buyers."

Schaback and Co-conspirator 1 knew that Paxful, Inc., did not have an effective AML program and continued to operate the Paxful platform despite that fact, creating a lax compliance culture that resulted in www.paxful.com being used to launder criminally derived funds, perpetuate fraud, and further criminal activity, such as allowing payments for Backpage.com and Bedpage.com, knowing that the sites were leading sources of commercial sex ads facilitating illegal prostitution throughout the United States. When employees questioned or complained to Schaback and Co-conspirator 1 about the lack of internal controls and the high levels of fraudulent activity on the platform, Schaback and Co-conspirator 1 responded by minimizing the problems or by claiming that they were working on solutions. Schaback and Co-conspirator 1, however, failed to implement any effective internal AML controls or to hire a compliance officer until late 2018. Even after they hired a compliance officer, Schaback and Co-conspirator 1 resisted certain KYC tools and policies that the compliance officer recommended. Schaback and Co-conspirator 1 prioritized Paxful, Inc.'s growth and profit over compliance with the BSA. As a result, Schaback and Co-conspirator 1 knew that Paxful was at heightened risk for being used to commit money laundering and other criminal activity but willfully failed to implement an effective AML program to mitigate the risks for years.

///

///

Through operating Paxful, Inc.'s online trading platform without an effective AML program, including without maintaining proper registration as an MTB, Schaback personally profited in the amount of at least $12,662,000 from July 2015 through at least June 2019.

*I have read and carefully reviewed with my attorney this Factual Basis for Plea. I agree that it is true and correct. I also agree that, if this matter proceeded to trial, the United States could establish each of the facts contained within this Factual Basis for Plea beyond a reasonable doubt, and that those facts satisfy the elements of the offense to which I am pleading guilty. Additionally, I agree that this Factual Basis for Plea is a summary made for the purpose of providing the Court with a factual basis for my guilty plea, and it does not include all of the facts known to me concerning criminal activity in which I and others engaged.*

Dated:

Schaback

ARTUR SCHABACK
Defendant